# Exhibit A[1] to Solomon Declaration
## Summaries of First Day Motions[2]

| | | | |
|---|---|---|---|
| **I.** | Administrative Pleadings | | 2 |
| | **A.** | The Notice Procedures Motion | 2 |
| | **B.** | The Schedules Extension Motion | 5 |
| | **C.** | The Interim Compensation Procedures Motion | 6 |
| **II.** | Utilities, Wages, Insurance and Tax Pleadings | | 8 |
| | **A.** | The Utilities Motion | 8 |
| | **B.** | The Insurance Motion | 10 |
| | **C.** | The Prepetition Wages Motion | 12 |
| **III.** | Cash Collateral and Financing Pleadings | | 13 |
| | **A.** | Amegy DIP Motion | 13 |
| **IV.** | Request for Emergency Consideration | | 15 |

---

[1] Capitalized terms not otherwise defined in this exhibit shall have the meanings ascribed to them in the declaration, or the underlying motion, as applicable.

[2] To the extent any of the information contained herein conflicts with the information in the particular motion at issue, the information in the Motion should control.

# I.
# Administrative Pleadings

A. **The Notice Procedures Motion**

1. The Debtor seeks to establish notice procedures in this Bankruptcy Case because it is impractical to mail notices for all matters to all of the creditors involved in this Bankruptcy Case and would impose a significant administrative and economic burden upon the Debtor's estate. There are numerous creditors and other interested parties upon whom, in certain instances, notice must be provided, unless the court orders otherwise. The Notice Procedures that the Debtor requests be implemented in this Bankruptcy Case, as set forth below, will streamline the distribution of notices, reduce the administrative cost of providing notice, and still provide all critical parties with an interest in this case with notice and an opportunity to be heard. The Debtor does not anticipate employing a claims and noticing agent in these cases and is concerned that high administrative costs could exhaust its already limited resources.

2. The Debtor therefore requests an order, as permitted by Bankruptcy Rules 2002(i) and (m), providing for the following Notice Procedures:

>   (a) At the outset of the Chapter 11 Case, with respect to all matters or proceedings that fall within the scope of Bankruptcy Rules 2002(a)(2), 2002(a)(3), 2002(a)(4), 2002(a)(6), 2002(d)(3), 4001, 6004, 6006 and 6007, the Court order that notice need be served only upon the following parties in the following manner, unless a different manner of service, consistent with the procedures set forth herein, is specifically requested and filed with the Court and served upon the parties entitled to notice herein at least ten (10) days prior to service:
>
>   >   (i) The Office of the United States Trustee, via the CM/ECF system;
>   >
>   >   (ii) Counsel for any committees appointed under section 1102 of the Bankruptcy Code, via the CM/ECF system;

(iii) The twenty (20) largest unsecured creditors of the Debtor via first-class mail at the last-known address for such creditor;

(iv) All parties claiming a security interest in any of the Debtor's property, including, but not limited to, the following entities via service upon counsel of record:

Amegy Bank ("**Amegy**");

Axis Capital, Inc.;

Ascentium Capital, LLC;

Elmar Industries, Inc.; and,

Toyota Industries Commercial Finance, Inc.;

(v) The Debtor's undersigned reorganization counsel, via the CM/ECF system, and via first-class mail, at the following address:

Foley Gardere
Foley & Lardner LLP
Attn: Melina Bales
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201

(vi) The Internal Revenue Service, via first-class mail, at the following address:

Internal Revenue Service
Special Procedures-Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

(vii) The holders of claims or interests who both file with the Court and serve on counsel for the Debtor, at the above address, a request for special notice, via first-class mail; and

(viii) Any party against whom direct relief is sought by motion, application or otherwise, such as the non-debtor party to an executory contract or unexpired lease being assumed or rejected, and parties asserting interests in property being sold, via first-class mail.

(b) Additionally, the filing of any pleading and/or Notice of Appearance in this Bankruptcy Case, other than a proof of claim, on behalf of one of the foregoing parties, via the CM/ECF system, shall constitute that party's consent to receive all future notice through the CM/ECF system such that the Debtor may remove any entity so appearing from future service lists; provided, however, that such party may request that notice be sent by first-class mail to a specified address, or by electronic mail to a specified address, by **both** filing with the Court **and** serving on the Debtor's reorganization counsel a request for alternative service and/or change of address. Counsel for any of the parties listed above, if counsel is added or other counsel is substituted in their place, may report this substitution by **both** filing with the Court **and** serving on the Debtor's reorganization counsel a request for special notice. Counsel making such a request shall receive future service though the CM/ECF system; provided, however, that such counsel may, in its request for special notice, request additional service by first-class mail at any address.

(c) To the extent that the foregoing is inapplicable, any party filing or causing the filing of a motion, complaint, response, objection, notice, application, request, or other paper in this bankruptcy case, shall be deemed to have consented to receive effective notice at the address appearing on such paper, and notice sent to that address shall be deemed to have been brought to the attention of such party.

(d) Other than as set forth above, and unless otherwise required by order of the Court, all notices in this case, shall be provided by first-class mail.

(e) Unless otherwise ordered by the Court, the limitation on notice proposed by this Motion shall not apply to the matters or proceedings referred to in Bankruptcy Rules 2002(a)(1), (4), (5) and (7), and (b), (d) (other than (d)(3)), and (f). These matters or proceedings shall be noticed in accordance with the Bankruptcy Rules.

(f) Future service on the Insured Depository Institutions as defined in Bankruptcy Code section 101(35) is to be made by first-class mail, including Amegy Bank.

3.      Additionally, the Debtor proposes to serve the Notice of Commencement, substantially in the form attached to the Notice Procedures Motion as Exhibit A (the "**Notice of Commencement**") in order to satisfy Rule 2002(a). The Notice of Commencement shall apprise creditors of the filing of these bankruptcy cases, the date, time, and location of the 341(a) meeting of creditors, and the deadline by which claims must be filed in this case.  The Debtor proposes to serve such Notice of Commencement to **all** creditors and parties-in-interest in this case and have such service be deemed sufficient to provide notice of the 341(a) meeting of creditors and the deadline for filing proofs of claim.  Furthermore, unless a creditor or interested party files and serves a request for special notice, such creditor or interested party shall only be provided with copies of those other Court filings required to be served on all creditors under Bankruptcy Rules 2002(a)(1), (5) and (7), and (b), (d)(other than (d)(3)), and (f).

**B.      The Schedules Extension Motion**

4.      Through the Schedules Extension Motion, the Debtor requests that the Court enter an order (the "**Order**") pursuant to section 521 of the Bankruptcy Code, and Rules 1007 and 9006 of the Federal Rules of Bankruptcy Procedure granting an extension of time to file Schedules and Statements. The Debtors request an additional thirty (31) days – for a total of forty-four (45) days – to file their Schedules and Statements, thereby establishing a deadline of **July 5, 2019**, for the filing of the Schedules and Statements.

5.      Given the fact that the Debtor does not anticipate employing a financial advisor given their relatively limited financial resources, the ongoing operational demands on the Debtor's personnel on a day-to-day basis, and the large number of potential creditors and parties in interest, it will take substantial time for the Debtor to analyze and compile the information needed to complete its Schedules and Statements. Consequently, it is almost certain that the Debtor will not

be able to prepare and file the Schedules and Statements within fourteen (14) days of the Petition Date.

### C.     The Interim Compensation Procedures Motion

6.     The Debtor requests that this Court enter an order establishing certain interim compensation and expense reimbursement procedures for the professionals retained in this bankruptcy case by the Debtor and the Committee (individually, a "**Professional**" or collectively, the "**Professionals**").[3]  Briefly stated, the requested procedures would require presentation (but not filing) of a detailed statement of services rendered and expenses incurred by each Professional for the prior month ("**Monthly Statement**") to the following "**Notice Parties**":

    (a)     counsel for the Debtor;

    (b)     counsel for the Committee (if any);

    (c)     the Office of the United States Trustee for the Northern District of Texas; and,

    (d)     counsel for Amegy Bank.

7.     If no objection is made within fourteen days of notice to a Monthly Statement, the Professional would be entitled to an interim payment (an "**Interim Compensation Payment**"), subject to this Court's subsequent approval under § 331 of the Code, as described below.

8.     The Debtor proposes that the monthly payment of compensation and reimbursement of expenses of the Professionals be subject to the following procedures:

    (a)     To the extent that any of the Professionals are holding retainers provided by the Debtor or the estate, such retainers may be drawn down by the Professionals pursuant to further order of the Court including the Financing Orders (as defined below).

    (b)     On or about the twentieth (20th) day of each month following the month for which compensation and reimbursement of expenses is sought, each

---

[3] The term "**Professional**" as used herein shall not refer to any professional(s) employed and/or retained by the Debtors in the ordinary course of business.

**EXHIBIT A TO THE DECLARATION OF STEVE SOLOMON IN SUPPORT OF FIRST-DAY MOTIONS**          **- PAGE 6**

4811-7156-9047.3

Professional seeking compensation pursuant to this Order may submit a monthly statement that contains (i) a description of the services rendered, (ii) the time spent, (iii) the hourly rates charged, and (iv) the name of the attorney, accountant, other professional or paraprofessional performing the work to the Notice Parties. The Monthly Statement need not be filed with this Court.

(c) Absent any objection filed by the Objection Deadline the Debtor shall pay and/or the Professional may draw down on its retainer, if any, an amount equal to 80% of all fees and 100% of all expenses set forth in the Monthly Statement.

(d) If any of the Notice Parties determines that the compensation or reimbursement sought in a particular Monthly Statement is inappropriate or unreasonable, or that the numbers and calculations are incorrect, such Notice Party shall, on or before the Objection Deadline, file with this Court and serve on (i) the Professional whose statement is objected to, and (ii) except to the extent duplicative of the foregoing clause, the other Notice Parties, a Notice of Objection to the Monthly Statement (the "**Notice of Objection**"), with a declaration setting forth the precise nature of the objection and the amount at issue. Thereafter, the objecting party and the Professional whose statement is objected to shall confer and attempt to reach an agreement regarding the correct payment to be made. If an agreement cannot be reached, or if no conference takes place, the Professional whose Monthly Statement is the subject of an objection shall have the option of (i) filing a motion with the Court outlining the basis for the objection and seeking an interim ruling from the Court and requesting authorization for payment, or (ii) foregoing payment with respect to the disputed amount until the next fee application hearing, at which time, this Court shall consider and dispose of the objection if payment of the disputed amount is requested. Within three (3) business days following entry of an Order resolving an objection to a Monthly Statement, the Debtor shall pay any outstanding portion of the fees and expenses authorized for payment by such Order.

(e) The first Monthly Statement may be submitted by each of the Professionals by on or about July 20, 2019 and shall cover the period from the Petition Date through June 30, 2019.

(f) Approximately every four (4) months, each of the Professionals may file with the Court and serve on the Notice Parties, on or before the last day of the month following the end of the period for which compensation is sought, an application for interim Court approval and allowance, pursuant to Bankruptcy Code § 331, of compensation and reimbursement of expenses incurred during the prior four months (an "**Interim Fee Application**"). The first such Interim Fee Application may be filed by each Professional on or

about **September 20, 2019**, and shall cover the period from the Petition Date through **August 31, 2019.** Any professional that desires to do so may file Interim Fee Applications earlier than that date.

(g) The existence of an application or a Court order that payment of compensation or reimbursement of expenses was improper as to a particular statement shall not disqualify a Professional from the future payment of compensation or reimbursement of expenses as set forth above.

(h) Neither the payment of nor the failure to object, in whole or in part, to the payment of Interim Compensation Payments as provided herein shall bind any party in interest or the Court with respect to the allowance of formal fee applications for compensation and reimbursement of expenses as to any such Professionals.

## II.
## Utilities, Wages, Insurance and Tax Pleadings

**A.    The Utilities Motion**

9. In the two locations where it either operates its own business or subleases a facility to another entity, the Debtor utilizes four utility vendors to provide electricity, internet and phone, or gas as set forth in the Utilities Motion. The Debtor also contracts with appropriate city and local authorities to provide water and sewage services.

10. Through the Utilities Motion, the Debtor respectfully requests that the Court enter an order: (a) deeming utilities adequately assured of future performance, and (b) establishing a procedure for determining requests for additional adequate assurance pursuant to section 366 of the Bankruptcy Code. In greater detail, the Debtors seek the entry of an order:

(a) prohibiting the Debtors' utility service providers (the "**Utilities**") from altering, refusing, discontinuing service to, or discriminating against, the Debtor;

(b) providing that the creation of an escrow account in favor of the Utilities, in an amount equal to the average of the invoiced amounts of each Utility during the Relevant Period (as defined below), provides the Utilities "adequate assurance of payment" within the meaning of Bankruptcy Code section 366; and

    (c)    establishing procedures for determining requests by Utilities for additional assurances and determining adequate assurance payments to be paid until a final adjudication by the Court on this matter.

11. Specifically, the Debtor requests entry of an order approving the following procedures with respect to adequate assurance requests from its utility providers

    (a)    this Court will set a hearing date within thirty (30) days of the entry of an order approving this Motion, as close to the thirtieth (30th) day as possible (the "**Hearing Date**") at which time any Objection shall be considered, pursuant to Bankruptcy Code section 366(c)(3)(A). Objections must be filed and served on or before the date that is seven (7) days prior to the Hearing Date, with respect to any Utility listed above. The Debtor may file and serve a reply to any Objection on or before the date that is two (2) days prior to the Hearing Date;

    (b)    in the event a Utility not listed above seeks assurance, such Utility must file and serve an Objection within fourteen (14) days after the date upon which it has received notice of entry of the order granting this Motion. The Debtor must serve the Utilities with notice of entry of the order within two (2) business days after discovering the existence of the Utility. The Court will set a hearing date no sooner than seven (7) days after the date upon which such Objection has been filed. The Debtor may file and serve a reply to any such Objection on or before the date that is two (2) days prior to such hearing date; and

    (c)    all Utilities will be deemed to have been provided with adequate assurance of payment in accordance with Bankruptcy Code section 366, without the need of an additional deposit or other security, until an order of the Court to the contrary is entered. Any Utility that does not file and serve a timely and proper Objection shall be deemed to have been provided with adequate assurance of payment in accordance with Bankruptcy Code section 366.

12. Under the circumstances of this Bankruptcy Case, the Utilities would not be prejudiced by the granting of the relief requested in the Motion. The Debtor has generally paid its utility bills on a timely basis, and there are no material prepetition payment defaults or arrearages, other than: (i) accrued prepetition charges which had not yet been billed or which were not yet due

or payable as of the Petition Date; or (ii) amounts whose payment may have been delayed or interrupted by the filing of this Bankruptcy Case.

13. The Debtor will establish a single, consolidated escrow account, into which the Debtor will deposit funds in an amount equal to a two week period of the average monthly amount invoiced by each Utility for the prior three-month period, which will serve as security for all of the Utilities during the pendency of this Bankruptcy Case. Bankruptcy Code section 366(c)(1)(A) expressly contemplates such an arrangement by providing that "assurance of payment" may be in the form of a cash deposit. 11 U.S.C. § 366(c)(1)(A). The Debtor has budgeted approximately $13,086.97 for such deposits.

### B. The Insurance Motion

14. In the ordinary course of its business, the Debtor maintains numerous insurance policies, including general liability, property, and workers' compensation (collectively, the "**Policies**," and each a "**Policy**"). The Policies are funded through premium finance agreements with Liberty Mutual Insurance and/or BankDirect Capital Finance whereby the Debtor paid a percentage down (25% for Liberty Mutual and 20% for BankDirect) at the beginning of the term and then makes monthly payments for the remainder of the term thereafter. Because of the timing of the bankruptcy filing, it is possible that, on the Petition Date, the Debtor may owe amounts on the Policies that arose from prepetition coverage.

15. The Policies are summarized in the table below:

| Type of Insurance | Provider | Term | Premium | Payment Type (if any) |
|---|---|---|---|---|
| Business Automobile | Liberty Mutual Insurance | 1/1/2019—1/1/2020 | $8,466.00 | 25% down, 9 combined monthly |
| Commercial Package | | | $33,662.00 | |

| | | | | |
|---|---|---|---|---|
| (includes Property and General Liability policies) | | | | payments beginning 2/1/2019 of approximately $4,076.56 |
| Commercial Umbrella | | | $6,749.00 | |
| Executive Risk Package (Executive Liability) | Zurich American Insurance Co. | 1/1/2019— 1/1/2010 | $17,257.00 | 20% down, 9 combined monthly payments beginning 2/1/2019 of approximately $2,020.72 |
| D&O Excess | Axis Insurance Co. | | $5,250.00 | |
| Worker's Compensation | *See* Below for Explanation | | | |

16. The Debtor's worker's compensation insurance is managed through its outside payroll processor, G&A Partners, which pays the applicable premium and administers any outstanding claims on the Debtor's behalf. As of the Petition Date, the Debtor is unaware of any existing, outstanding worker's compensation claims but requests the ability to make whatever payments are necessary to satisfy its obligations to G&A Partners should any pre-petition worker's compensation claims exist.

17. The Debtor seeks the authority, in their reasonable business judgment, (i) to continue to make monthly payments required to keep the Policies in effect, (ii) to continue making the payments required to finance the Policies with for Liberty Mutual and BankDirect, and (iii) to continue to administer the Policies postpetition. The Debtor further requests the authority to pay all such amounts in the ordinary course of their businesses. The Debtor estimates that the amount necessary to pay any existing pre-petition insurance obligations will not exceed $15,000.00 and will be paid in the ordinary course of its business as necessary.

### C.     The Prepetition Wages Motion

18.     The Debtor manufactures, packages, and distributes fresh and shelf-stable foods. The Debtor's employees are essential to the Debtor operations, and to retain its employees, the Debtor must be able to pay its payroll. Thus, the Debtor files this Motion seeking authority to satisfy payroll for the week ending May 17, 2019 (which is payable on or about May 24, 2019), as well as the payroll for the period immediately prior to the filing on Monday, May 20, 2019.

19.     In the course of its normal business operations, the Debtor employs approximately fifty-six (57) total employees that vary from staff to management. The Debtor also contracts with a staffing agency, Quality Staffing, to provide an additional twenty-five (25) temporary employees. The Debtor seeks to pay its own employees in full and proposes to pay Quality Staffing a portion of the outstanding amount owed to it.

20.     By the Prepetition Wages Motion, the Debtor seeks authority to pay certain prepetition obligations owing to its employees including, without limitation, (a) amounts owed to employees for wages, salaries, contractual compensation, and incentives; (b) amounts owed to employees for reimbursement of business expenses incurred on the Debtor's behalf; (c) maintenance of employee health and welfare plans; and (d) other miscellaneous employee expenses and benefits (collectively, the "**Prepetition Employee Compensation**").

21.     The next payroll for the Debtor's employees is scheduled for Friday, May 24, 2019 for work actually performed in the period ending Friday, May 17, 2019. The Debtor funds a given week's payroll on Wednesday of that week, meaning the May 24 payroll will be funded to Quality Staffing on or about Wednesday, May 22. The timing of these post-petition payrolls means that employees will necessarily be paid for work performed prepetition, including work performed during the work period ending May 24, 2019. Thus, as of the Petition Date, the Debtor estimates

that its outstanding prepetition payroll obligations are approximately $85,000.00, including approximately $18,000 in sales commissions owed to two employees. None of the Debtor's employees are owed more than the priority cap pursuant to § 507(a)(4).

22. Furthermore, the Debtor provides its employees with accrued vacation time ("**Vacation**") generated over the course of the employee's tenure. Pursuant to the Vacation plan, employees accumulate time for each payroll period. Employees have a rolling balance for Vacation time and can either use that time over the course of the Debtor's fiscal year or cash it out. The Debtor estimates that its employees have accrued approximately $$115,070.50 in Vacation time. Even adding these accrued Vacation amounts to unpaid pre-petition wages, none of the Debtor employees exceed the priority cap under § 507(a)(4).

23. Through the Wages Motion, the Debtor requests authority (but not direction) to pay certain pre-petition amounts attributable to the Employee Benefits and Prepetition Employee Benefits from time to time as and when such amounts become due in the ordinary course of business.

## III.
## Cash Collateral and Financing Pleadings

**A.     Amegy DIP Motion**

24. As set forth in detail in the Solomon Declaration and in the Amegy DIP Motion,[4] the Debtor seeks authority to incur post-petition debtor-in-possession financing in the form of a line of credit with Amegy in the total amount of $3.75 million (as described in more detail and defined below, the "**DIP Facility**"). The post-petition line with Amegy will be guaranteed by the Debtor's largest investor and the Chairman of its Board, Jeffrey D. Franco. As security for the

---

[4] For more information on the Amegy DIP Motion, see the Amegy DIP Motion and the Solomon Declaration.

DIP Facility and adequate protection for the continued use of Amegy's cash collateral post-petition, the Debtor seeks authority to grant related post-petition security interests and administrative-expense priorities to Amegy as set forth below.

25. The Debtor needs additional financing to continue its business operations for the foreseeable time required for a successful reorganization. The proposed DIP Facility provides the Debtor with approximately $3,750,000 in post-petition financing, $2,500,000 of which will be used to pay off the pre-petition Amegy Debt to pay off the Pre-Petition Obligations and $1,250,000 for future business operations and anticipated restructuring costs. The Debtor does not anticipate exceeding $3,750,000 in post-petition financing. The specific terms of the DIP Facility are set forth in that certain *Debtor-in-Possession Loan Agreement* (the "**DIP Loan Agreement**") that the Debtor negotiated with Amegy as post-petition lender (together with its successors and assigns, the "**DIP Lender**"). The DIP Loan Agreement is subject to modifications pursuant to any Interim and Final Order that this Court enters relating to this Motion.

26. Pursuant to the terms of the DIP Loan Documents, the cash generated by the Debtor constitutes Amegy's Cash Collateral. Continuing the Debtor's operations post-petition will require the use of Amegy's Cash Collateral, particularly where such Cash Collateral represents proceeds from accounts receivable generated pre-petition. Accordingly, Amegy has agreed to allow the Debtor to use its Cash Collateral subject to the grant of adequate protection to Amegy, and the Debtor seeks approval of that use in the Amegy DIP Motion in order to prevent significant and costly disruptions of its business.

27. The Debtor requests that the Court enter an order substantially in the form of the interim order attached to the Motion as Exhibit B (the "**Interim Order**") and, at the appropriate

time, a final order (the "**Final Order**") authorizing the Debtor to obtain interim financing and incur post-petition indebtedness pursuant to the DIP Facility.

**B.**    **Post-Petition Bank Accounts.**

28.    The Debtor currently has pre-petition bank accounts open at Amegy and Hillcrest Bank. In connection with the Amegy DIP Facility and in compliance with applicable requirements of the Office of the United States Trustee, it is the Debtor's intent to establish a post-petition debtor-in-possession account at Amegy and use that account exclusively during this Chapter 11 Case (except as necessary to fund an escrow account for utility adequate assurance amounts, in which case such account shall also be at Amegy). The Debtor will cease using and likely close all other pre-petition accounts wherever located.

### IV.
### Request for Emergency Consideration

29.    Due to the nature of the relief sought in the First Day Motions listed above, the Debtor file a request for emergency consideration of same pursuant to the Local Bankruptcy Rules for the Northern District of Texas.