Stephen A. McCartin (TX 13374700)
Mark C. Moore (TX 24074751)
Melina T. Bales (TX 24106851)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile:  (214) 999-4667
smccartin@foley.com
mmoore@foley.com
mbales@foley.com

**PROPOSED COUNSEL TO DEBTOR**
**FRANKIE V'S KITCHEN, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § | **Chapter 11** | |
| § | | |
| **FRANKIE V'S KITCHEN, LLC.** § | **Case No.: 19-31717** | |
| § | | |
| **Debtor.** § | | |

## MOTION FOR ORDER APPROVING/AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF FRANKIE V'S KITCHEN, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE

Frankie V's Kitchen, LLC, as debtor and debtor-in-possession (the "**Debtor**") hereby files its *Sale Motion for Order Approving/Authorizing (i) Sale of Substantially All of the Assets of Frankie V's Kitchen Free and Clear of All Liens, Claims, Encumbrances, and Interests and (ii) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale* (the "**Sale Motion**"), requesting entry of an order pursuant to 11 U.S.C. §§ 105, 363, and 365, and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure

a) authorizing the sale of substantially all of the assets associated with or related to the operations of the Debtor (the "**Assets**") free and clear of liens, claims, encumbrances, and interests (the "**Sale**");

    b)      approving an *Asset Purchase Agreement* or similar sale contract (the "**APA**") with Casa Verde Foods, LLC ("**Purchaser**") providing definitive terms substantially in the form of the letter of intent (the "**Letter**") attached hereto as **Exhibit A**[1];

    c)      approving the assumption and assignment of certain executory contracts and unexpired leases, including, for example, licenses and permits (the "**Designated Contracts**") to the Purchaser; and,

    d)      granting related relief.

In support of the Sale Motion, the Debtor respectfully states as follows:

## I.
## EXECUTIVE SUMMARY

1. The purpose of this Sale Motion is to seek approval of the sale of all or virtually all of the Debtor's Assets to the Purchaser. "Assets" as contemplated by the proposed Sale to the Purchaser does not include: 1) any cash held by the Debtor, 2) any accounts receivable generated by the Debtor prior to the closing date (the "**Closing**") of the proposed Sale, or 3) claims or causes of action of or that may be asserted by the Debtor, including, but not limited to, any claims arising under Chapter 5 of the Bankruptcy Code or the Debtor's various insurance policies.

2. Accordingly, the Assets constitute primarily the Debtor's inventory and equipment, wherever located, the Debtor's intellectual property (to the extent any such property exists) or any other physical assets owned by the Debtor that are necessary for the operation of the Debtor's business. The Debtor also proposes to assume and assign certain executory contracts and unexpired leases identified by the Purchaser (the "**Designated Contracts**").

---

[1]      Due to the expedited nature of the proposed sale to the Purchaser and the circumstances surrounding the Debtor's receipt of and agreement to the terms contained in, the Letter, a definitive sale and/or asset purchase agreement has yet to be finalized. The Debtor will supplement this Sale Motion with any such agreement prior to the hearing on this Sale Motion scheduled for **July 17, 2019 at 9:30 A.M**.

3. At any hearing on the Sale Motion, the Debtor would show the following:

   a. That the Sale of the Debtor's Assets to the Purchaser under the circumstances of this bankruptcy case is a sound exercise of the Debtor's business judgment after arm's-length negotiations that resulted in the best value being realized for such Assets;

   b. That the terms of the APA are reasonable and appropriate under the circumstances, including (but not limited to) with respect to the (a) the purchase price to be paid to the Debtor (b) the Assets to be sold to the Purchaser, (c) any assumed or excluded liabilities, (d) any warranties or covenants, (e) events of termination, (f) the Break-Up Fee, and (g) relationships between the Debtor, its creditors, and Purchaser (if any); and,

   c. Assumption and assignment of the Designated Contracts is in the best interests of the Debtor, its estate, and the creditors thereof.

4. The Debtor will further show that the proposed Sale of its Assets is necessary and appropriate in light of its economic circumstances and is in the best interests of its estate and the creditors thereof.

5. As a result the Debtor should be authorized to sell all of its rights, title, and interests in the Assets to the Purchaser free and clear of all liens, claims, encumbrances, and interests, with all such liens, claims, encumbrances, and interests to attach to the proceeds of the Sale. The Debtor should be further authorized to assume and assign the Designated Contracts to the Purchaser.

6. Additionally, the Debtor requests approval of a topping or break-up fee payable to the Purchaser in the amount of $50,000 in the event that the Sale to Purchaser does not close on or before July 24, 2019 (the "**Break-Up Fee**").

## II.
## JURISDICTION AND VENUE

7. This Court has jurisdiction to consider the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested herein are §§ 105, 363, and 365 of the Bankruptcy Code,[2] and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## III.
## BACKGROUND

### A. The Chapter 11 Case

9. On May 20, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor remains in possession of its property and is managing its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. The Debtor continues to operate and to manage its business as a "debtor-in-possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case pursuant to section 1104 of the Bankruptcy Code. On June 3, 2019, the US Trustee appointed an official committee of unsecured creditors comprising of Dianne Betts, Liberty Carton Co., and Thomas Max Nygaard McNutt IV Trust (the "**Committee**").

11. Additional details concerning the Debtor, its operational history and capital structure, and the circumstances that led to the filing of this Chapter 11 Case can be found in the *First Day Declaration of Steve Solomon* (the "**First Day Declaration**") filed at Docket No. 11 in the above-captioned case.

---

[2] The term "**Bankruptcy Code**" shall mean 11 U.S.C. §§ 101 *et seq.*, and all references to "§" shall mean the Bankruptcy Code unless otherwise noted.

### B. The Proposed Sale

12. On or about July 3, 2019, the Debtor received the offer embodied in the Letter from the Purchaser for substantially all of its Assets, excluding cash, accounts receivable, and claims and causes of action.

13. At a hearing later that day (the same date of the filing of this Sale Motion), the Debtor conferred with the Committee and other parties-in-interest and decided to pursue an expedited Sale to the Purchaser pursuant to the terms outlined in the Letter, subject to Court approval and a definitive APA to follow.

14. The Debtor then informed the Court of its intent to file this Sale Motion as quickly as possible in order to give parties as much notice as it could under the circumstances, and the Court agreed to hear the Sale Motion on July 17, 2019 at 9:30 A.M (the "**Sale Hearing**"). Until approved by the Court at the Sale Hearing, the proposed Sale to the Purchaser will be subject to higher and better offers, should any such offers be made to the Debtor.

## IV.
## RELIEF REQUESTED AND BASIS THEREFOR

15. By this Sale Motion, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, the Debtor seeks an order substantially in the form attached hereto as **Exhibit B** (the "**Sale Order**") that:

    a. authorizes the Sale of the Assets to the Purchaser free and clear of all liens, claims, interests, and encumbrances;

    b. approves the assumption and assignment of the Designated Contracts to the Purchaser;

    c. waives any fourteen (14)-day stay imposed by Bankruptcy Rules 6004 and 6006; and,

    d. grants such other and further relief as is just and proper.

### A. The Sale Is An Exercise of Sound Business Judgment And Should Be Approved.

16. Section 363 of the Bankruptcy Code authorizes a debtor to sell assets of the estate other than in the ordinary course of business and provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate ...."[3]

17. Courts approve proposed sales of property pursuant to § 363 if the transaction represents the reasonable business judgment of the debtor.[4] If a valid business justification exists for the sale, as it does here, a debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company."[5]

---

[3] 11 U.S.C. § 363(b)(1).

[4] *See Inst. Creditors of Cont'l. Air Lines, Inc. v. Cont'l. Air Lines, Inc. (In re Cont'l. Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty … there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) ("A sale of assets under § 363 … is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons."); *In re Delaware & Hudson Rv. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the preconfirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith"); *see also Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986).

[5] *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *GBL Holding Co.v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) ("Great judicial deference is given to the [t]rustee's exercise of business judgment" [in approving a proposed sale under section 363].). Therefore, any party objecting to HBT's proposed sale must make a showing of "bad faith, self-interest or gross negligence." *In re Integrated Res., Inc.*, 147 B.R. at 656 (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872-73 (Del. 1985)); *see also Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D. N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

18. In determining whether a proposed § 363(b)(1) sale satisfies the "business judgment standard," courts consider the following: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the price is fair and reasonable; and (d) whether the parties have acted in good faith.[6] The Debtor will show that the proposed sale satisfies all these factors.

19. First, the Debtor has proposed the Sale of its Assets after thorough consideration of all viable alternatives and has concluded that the Sale is supported by a number of sound business reasons. In particular, the Debtor submits that the facts described above support an expeditious Sale of its Assets to preserve value for the estate and provide a strong business justification for the Sale of its Assets. The Debtor believes that the best way to maximize value to the estate and the creditors thereof is through the Sale to the Purchaser.

20. Second, the Debtor will have provided notice of this Sale Motion under the circumstances described above. The Debtor submits that that such notice constitutes adequate and reasonable notice to interested parties. Additionally, the Debtor will contact any other parties that may have expressed interest in the Debtor's Assets to inform such parties of the proposed Sale to the Purchaser. The Debtor believes that a more extended process may harm the recovery to its estate and the creditors thereof.

21. Third, the value to be received by the Debtor for its Assets is the highest possible value under the circumstances. Prior to the Sale Hearing, the proposed Sale to the Purchaser will be subject to higher and better offers should the Debtor receive any such offers from interested parties.

---

[6] *See, e.g.*, *In re N. Am. Techs. Group, Inc.*, 2010 Bankr. LEXIS 5834, *7 (Bankr. E.D. Tex. Aug. 16, 2010) (citing *In re Condere*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998)); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).

22. Fourth, the Debtor believes that the purchase price to be obtained for the Debtor's Assets is fair and reasonable. Further, the Debtor will show at the Sale Hearing that the proposed Sale to the Purchaser was negotiated in good faith. Each party will have been represented by counsel throughout the transaction. For the foregoing reasons, the Debtor submits that the approval of the proposed Sale is appropriate and warranted under § 363 of the Bankruptcy Code.

**B.     The Sale of the Assets Will Be Free and Clear of Liens, Claims, Encumbrances, and Interests.**

23. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances in property of an entity other than the estate if

   (i)    applicable nonbankruptcy law permits a sale of such property free and clear of such interest;

   (ii)   such entity consents;

   (iii)  such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

   (iv)   such interest is in *bona fide* dispute; or

   (v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[7]

Because section 363(f) of the Bankruptcy Code is drafted "in the disjunctive," satisfaction of any one of its five (5) requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests.[8]

---

[7]   11 U.S.C. § 363(f).

[8]   *In re Nature Leisure Times, LLC*, 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007); *see also Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D. N.Y. Mar. 6, 1992) ("[S]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D. N.Y. 1986).

24. With regard to the Sale of the Assets to the Purchaser, the Debtor believes that at least one of the tests in § 363(f) will be satisfied. In particular, the Debtor believes that § 363(f)(2) will be met because the Debtor's primary secured creditor, whose liens will attach to the proceeds from the Sale of the Assets to the same extent and priority as such liens exist in the Assets, consents to the proposed Sale.

### C. The Purchaser Is Entitled to Protections as a Good-Faith Purchaser

25. This Court has upheld § 363 purchase agreements "negotiated, proposed, and entered into … in good faith, without collusion … [resulting from] arm's-length bargaining with … parties represented by independent counsel."[9] A sale to a good-faith purchaser cannot be avoided under § 363(m), unless the sale authorization was stayed pending appeal.[10] However, "[t]he trustee may avoid a sale … if the sale price was controlled by an agreement among potential bidders…."[11] Additionally, for the sale to be considered in good-faith, consideration must: (1) be fair and reasonable; (2) be the highest and best offer for the property, and; (3) constitute reasonably equivalent value, fair value, and fair consideration.[12]

26. The Debtor will show at the Sale Hearing that it negotiated the APA at arm's-length, in good faith, to achieve the best offer for the Assets. The Debtor will show that the Purchaser was represented by counsel throughout such negotiations, and that the Purchaser is not an affiliate or insider of the Debtor or otherwise related to the Debtor. Moreover, any equity ownership or future compensation offered to the Debtor's insiders will be disclosed to this Court

---

[9] *In re TriDimension Energy, L.P.*, 2010 Bankr. LEXIS 4838, *13 (Bankr. N.D. Tex. Nov. 19, 2010).

[10] *See* 11 U.S.C. § 363(m) ("The reversal or modification of an authorization under subsection (b) of this section of a sale … does not affect the validity of [the] sale … to an entity that purchased … the property in good faith….").

[11] *Id.* § 363(n).

[12] *TriDimension*, 2010 Bankr. LEXIS 4838 at *13.

at the Sale Hearing. As such, the Debtor will show that the Purchaser is entitled to the protections of a good-faith purchaser under § 363(m) of the Bankruptcy Code, and none of the applicable asset purchase agreement(s) constitutes an avoidable transaction pursuant to § 363(n).

27. Further, the Debtor submits that any agreement executed with or related to the Sale of its Assets to the Purchaser will provide substantial value to the bankruptcy estate because it will facilitate an efficient and valuable disposition of its Assets for fair and reasonable consideration.[13]

### D. The Debtor May Enter into the APA with the Purchaser or Any Other Executed Agreement Related to or Associated with the Sale of the Assets.

28. In connection with a sale of substantially all of a debtor's assets, courts routinely approve entry into asset purchase agreements.[14] The Debtor will show that the APA has been negotiated at arm's length and that the Debtor utilized its business judgment in an attempt to maximize the recovery to its estate.

### E. Assumption And Assignment of Certain Executory Contracts and Unexpired Leases Is Authorized By Section 365 of The Bankruptcy Code.

29. Sections 365(a) and (b) of the Bankruptcy Code authorize a debtor-in-possession to assume, subject to the court's approval, executory contracts or unexpired leases of the

---

[13] *See In re TriDimension Energy, L.P.*, 2010 Bankr. LEXIS 4838, at *9 (finding that reasonably equivalent value existed under the Bankruptcy Code); *Mellon Bank, NA. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1991) (same), *cert. denied,* 503 U.S. 937 (1992); *see also Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors (In re R.M.I., Inc.)*, 92 F.3d 139 (3d Cir. 1996); *Salisbury v. Texas Commerce Bank-Houston, N.A. (In re WCC Holding Corp.)*, 171 B.R. 972, 984 (Bankr. N.D. Tex. 1994) (reasonably equivalent value under Texas law) (citing *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1495 (5th Cir.), *cert. denied.* 510 U.S. 821 (1993) and *Southmark Corp. v. Riddle (In re Southmark Corp.)*, 138 B.R. 820, 829 (Bankr. N.D. Tex. 1992)); *In re China Resource Prod. Ltd. v. Favda Intern., Inc.*, 856 F. Supp. 856, 866 (D. Del. 1994) (citing *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 792 (Del. Ch. 1992)).

[14] *See, e.g.*, *In re Tridimension Energy, L.P.*, 2010 WL 5209233, at *2 (Bankr. N.D. Tex. Oct. 29, 2010) (approving the debtor's proposed asset purchase agreement); *In re Enron Corp.*, No. 01-16034, 2002 WL 32154269, at *4 (Bankr. S.D. N.Y. Apr. 24, 2002). Such agreements are approved if they are an exercise of the debtor's sound business judgment. *See, e.g.*, *Tridimension Energy*, 2010 WL 5209233, at *2 (finding that "the Debtors have demonstrated a compelling and sound business justification" for approval of the proposed asset purchase agreement); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332377, at *5 (Bankr. D. Del. May 17, 2002); *In re Arlco, Inc.*, 239 B.R. 261, 265 (Bankr. S.D. N.Y, 1999).

debtor.[15] In turn, section 365(b)(1) of the Bankruptcy Code codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
>
> (A)  cures or provides adequate assurance that the trustee will promptly cure, such default …;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)  provides adequate assurance of future performance under such contract or lease.[16]

30. In analyzing whether the assumption or rejection of an executory contract or unexpired lease pursuant to § 365(a) should be approved, courts apply the "business-judgment" test, which requires a determination that the requested assumption or rejection be "advantageous to the estate and the decision be based on sound business judgment."[17] Courts generally will not second-guess a debtor's business judgment concerning the assumption of an executory

---

[15] *See generally* 11 U.S.C. § 365(a) and (b); *In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (recognizing that, "[u]nder section 365 of the Bankruptcy Code, a debtor may assume an executory contract or unexpired lease"); *In re Jamesway Corp.*, 201 B.R. 73, 76 (Bankr. S.D. N.Y. 1996).

[16] 11 U.S.C. § 365(b)(1).

[17] *In re McCommas LFG Processing Partners, LP*, 07-32219-HDH-11, 2007 WL 4234139, at *14 (Bankr. N.D. Tex. Nov. 29, 2007). *See*, *e.g., In re Group of Institutional Investors, Inc. v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) ("The question [of assumption] is one of business judgment."); *In re Idearc, Inc.*, 423 B.R. at 162 ("Courts apply the 'business judgment test' [to a debtor's decision to assume and executory contract or lease], which requires a showing that the proposed course of action will be advantageous to the estate…."); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993) (holding that, when deciding whether to grant a motion to assume, a court must put itself in the trustee's position and determine whether such assumption would be a good decision or a bad one).

contract.[18]

31. Here, the Debtor's assumption and assignment of the Designated Contracts to the Purchaser meets the business-judgment standard and satisfies the requirements of § 365 of the Bankruptcy Code. As discussed above, the Sale contemplated by this Sale Motion will provide significant benefit to the Debtor and its estate. Because the Debtor cannot obtain the benefits of the Sale without the assumption and assignment of the Designated Contracts, the assumption of these Designated Contracts is undoubtedly a sound exercise of the Debtor's business judgment.

32. Further, a debtor-in-possession may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with § 365(a), and provides adequate assurance of future performance by the assignee, "whether or not there has been a default" under the agreement. 11 U.S.C. § 365(f)(2). Significantly, among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.[19] The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but it should be given "practical, pragmatic construction."[20]

---

[18] *See In re McCommas LFG Processing Partners, LP*, 2007 WL 4234139, at *15 ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered." (citing *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir.), aff'd, 465 U.S. 513 (1984))). *See, e.g.*, *In re Paolo Gucci*, 193 B.R. 411, 414 (S.D.N.Y. 1996); *Sharon Steel Corp. v. National Gas Fuel Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *In re III Enter., Inc.*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject an executory contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment – a standard which we have concluded many times is not difficult to meet.").

[19] *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D. N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of a lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding); *In re Old S. Coors*, 27 B.R. 923, 926 (Bankr. N.D. Miss. 1983) (finding that the assignees' "long and successful business experience and financial strength" satisfied the "reasonable standards of adequate assurance of future performance").

[20] *In re Liljeberg Enters, Inc.*, 304 F.3d 410, 438-39 (5th Cir. 2002) ("[T]o determine if the debtor in possession has provided 'adequate assurance of future performance'… courts must look to 'factual

33. Here, all monetary defaults that must be cured (the "**Cure Costs**") under § 365(b) as a pre-condition to the assumption and assignment of the Designated Contracts[21] will be cured prior to the proposed closing. At the Sale Hearing, the Debtor will demonstrate to the satisfaction of this Court that the Purchaser has sufficient assets to continue performance under any Designated Contract. Therefore, the Sale Hearing will provide this Court and other interested parties with the opportunity to evaluate and, if necessary, challenge the ability of that offeror to provide adequate assurance of future performance under the Designated Contracts. Accordingly, the Debtor submits that the assumption and assignment of the Designated Contracts as set forth herein should be approved.

34. To assist in the assumption, assignment, and sale of the Designated Contracts, the Debtor requests that the Bankruptcy Court enter an order providing that anti-assignment provisions in the Designated Contracts shall not restrict, limit, or prohibit the assumption, assignment, and sale of the Designated Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of § 365(f) of the Bankruptcy Code.

35. Section 365(f)(1) of the Bankruptcy Code permits a debtor-in-possession to assign unexpired leases and executory contracts free from such anti-assignment restrictions, providing, in pertinent part, that:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the

---

conditions,' including 'consider[ation of] whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee.") (internal citations omitted); *EBG Midtown South Corp. v. McLaren/Hart Environmental Eng'g. Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), *aff'd,* 993 F.2d 300 (2d Cir. 1993).

[21] The Sales Procedures Order established a fair and efficient process by which the Debtor will timely satisfy the requirements for assumption and assignment of Designated Contracts as requested in this Sale Motion.

trustee may assign such contract or lease under paragraph (2) of this subsection . . . .[22]

36. By operation of law, § 365(f)(1) invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease.[23] Section 365(f)(3) goes beyond the scope of § 365(f)(1) by prohibiting enforcement of any clause creating a right to modify or terminate the contract or lease upon a proposed assumption or assignment thereof.[24]

37. Other courts have recognized that provisions that have the effect of restricting assignments also cannot be enforced.[25] Similarly, in *In re Mr. Grocer, Inc.*, the court noted that:

> [The] case law interpreting § 365(f)(1) of the Bankruptcy Code establishes that the court does retain some discretion in determining that lease provisions, which are not themselves ipso facto anti-assignment clauses, may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets.[26]

Thus, the Debtor requests that any anti-assignment provisions be deemed not to restrict, limit, or prohibit the assumption, assignment, and sale of the Designated Contracts and be deemed and

---

[22] 11 U.S.C. § 365(f)(1).

[23] *See In re Pin Oaks Apartments*, 7 B.R. 364, 367 (Bankr. S.D. Tex. 1980) (finding that § 365(f)(1) grants the debtor "rights to assign a lease to a third party who becomes fully liable thereunder, notwithstanding any contrary contractual provisions which restrict, prohibit or condition any such assignment"). *See, e.g.*, *Coleman Oil Co., Inc. v. The Circle K Corp. (In re The Circle K Corp.)*, 127 F. 3d 904, 910-11 (9th Cir. 1997) ("[N]o principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365.").

[24] *See, e.g., In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D. N.Y. 1996) (finding that § 365(f)(3) prohibits enforcement of any lease clause creating right to terminate lease because it is being assumed or assigned, thereby indirectly barring assignment by debtor; all lease provisions, not merely those entitled anti-assignment clauses, are subject to court's scrutiny regarding anti-assignment effect).

[25] *See In re Rickel Home Centers, Inc.*, 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 365(f), courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions."); *see also In re U.L Radio Corp.*, 19 B.R. 537, 543 (Bankr. S.D. N.Y. 1982) ("Any lease provision, not merely one entitled 'anti-assignment clause,' would be subject to the court's scrutiny regarding its anti-assignment effect.").

[26] 77 B.R. 349, 354 (Bankr. D. N.H. 1987).

found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

### F. Cause Exists To Eliminate Any Stay Imposed By The Bankruptcy Rules.

38. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."[27] Bankruptcy Rule 6006 provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."[28]

39. The Debtor requests that the Sale Order be effective immediately, thereby waiving the 14-day stays imposed by Bankruptcy Rules 6004 and 6006. These waivers or eliminations of the 14-day stays are necessary for the Sale to close as expeditiously as possible. The Debtor respectfully submits that it is in the best interest of its estate to close the Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtor requests that the Court eliminate the 14-day stays imposed by Bankruptcy Rules 6004 and 6006.

### G. The Proposed Break-Up Fee is Reasonable Under the Circumstances.

40. In the event that the proposed Sale to the Purchaser does not close on or before July 24, 2019—whether as a result of the receipt of a higher or better offer or some other reason—the Debtor has proposed to pay the Purchaser the Break-Up Fee as compensation for the time and expense it will have incurred in being involved in this Sale process. The Debtor believes that under the circumstances, the Break-Up Fee, which represents approximately 2% of the proposed purchase price by the Purchaser, is reasonable. The Debtor notes that the proposed

---

[27] Fed. R. Bankr. P. 6004(h).

[28] Fed. R. Bankr. P. 6006(d).

Sale Order attached hereto does not reference the Break-Up Fee, since such order would only be entered upon approval of the Sale to Purchaser, in which case the Break-Up Fee would not be paid.

**WHEREFORE**, the Debtor respectfully requests that this Court enter the proposed Sale Order and award the Debtor such other and further relief as this Court deems just and proper.

DATED: July 3, 2019

Respectfully submitted by:

*/s/ Mark C. Moore*
Stephen A. McCartin (TX 13374700)
Mark C. Moore (TX 24074751)
Melina T. Bales (TX 24106851)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile:  (214) 999-4667
smccartin@foley.com
mmoore@foley.com
mbales@foley.com

**PROPOSED COUNSEL TO DEBTOR**
**FRANKIE V'S KITCHEN, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, on July 3, 2019, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

*/s/ Mark C. Moore*
Mark C. Moore