Stephen A. McCartin (TX 13374700)
Mark C. Moore (TX 24074751)
**FOLEY GARDERE**
**Foley & Lardner LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile:  (214) 999-4667
smccartin@foley.com
mmoore@foley.com

**PROPOSED COUNSEL TO DEBTOR**
**AND DEBTOR-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § | | Chapter 11 |
| §  | | |
| **FRANKIE V'S KITCHEN, LLC.** § | | Case No.: 19-31717 |
| § | | |
| **Debtor.** § | | |

## MOTION TO APPROVE SETTLEMENT AGREEMENT

Frankie V's Kitchen, LLC, as debtor and debtor in possession (the "**Debtor**"), files this *Motion to Approve Settlement Agreement* (the "**Motion**") by and between the Debtor, the Official Committee of Unsecured Creditors (the "**Committee**"), Agneto Holdings, LLC ("**Agneto**") and Jeffrey Franco ("**Franco**") (collectively, the "**Parties**").

### I.
### EXECUTIVE SUMMARY

1. On July 17, 2019, the Debtor filed a motion for authority to sell substantially all of its assets to the proposed purchaser for $2.5 million (the "**Sale Motion**").The Committee filed an objection to the Sale Motion.

2.  On June 27, 2019, the Committee filed a motion for the appointment of a Chapter 11 Trustee (the "**Trustee Motion**"). The Debtor filed an objection and response to the Trustee Motion.

3.  The Amegy Senior Secured Loan is now owned by Agneto, which is wholly owned by Mr. Franco. Mr. Franco is the Debtor's largest equity owner and a member of the Debtor's board of directors.

4.  The Parties have now resolved their disputes pursuant to the terms and conditions of the Settlement Agreement attached hereto as **Exhibit A**. Accordingly, the Sale Motion was granted by this Court on July 17, 2019.

5.  This Motion requests approval of the Settlement Agreement.

## II.
## JURISDICTION AND VENUE

6.  This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## BACKGROUND

**A.  The Chapter 11 Case**

7.  On May 20, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor remains in possession of its property and is managing its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

8.  The Debtor continues to operate and to manage its business as a "debtor-in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner

has been appointed in the chapter 11 case pursuant to section 1104 of the Bankruptcy Code. On June 3, 2019, the US Trustee appointed the Committee comprising of Dianne Betts, Liberty Carton Co., and Thomas Max Nygaard McNutt IV Trust.

9. Additional details concerning the Debtor, its operational history and capital structure, and the circumstances that led to the filing of this chapter 11 case can be found in the First Day Declaration of Steve Solomon (the "**First Day Declaration**") filed at Docket No. 11.

**B. The Senior Secured Loan**

10. Zions Bancorporation, N.A. d/b/a Amegy Bank ("**Amegy**") loaned the Debtor approximately $2,500,000 (the "**Senior Secured Loan**") prior to the Petition Date, secured by a first priority, perfected security interest in substantially all of the Debtor's assets. Mr. Franco, the Debtor's largest investor and a Board member, guaranteed the Senior Secured Loan.

11. This Court has entered two interim orders authorizing the Debtor's use of cash collateral, which granted Amegy certain post-petition replacement liens and other adequate protection (Docket Nos. 33 and 70, together, the "**Cash Collateral Orders**").

12. On July 2, 2019, Amegy assigned the Senior Secured Loan and Amegy's rights and protections under the Cash Collateral Orders to Agneto, which is wholly owned by Franco. Accordingly, Agneto is now the owner and holder of the Senior Secured Loan.

**C. The Settlement**

13. On June 27, 2019, the Committee filed a Motion to Appoint Trustee (the "**Trustee Motion**"). The Debtor filed an objection and response opposing the appointment of a Chapter 11 Trustee.

14. On or about July 3, 2019, Casa Verde Foods, LLC ("**Purchaser**") sent the Debtor a letter of intent to purchase substantially all of the Debtor's assets, excluding cash, accounts receivable, and claims and causes of action, for $2,500,000.

15. On July 3, 2019, the Debtor filed its motion for authority to sell substantially all of its assets to the Purchaser (the "**Sale Motion**"), which was set for an expedited hearing on July 17, 2019 at 9:30 A.M. (the "**Sale Hearing**"). The Committee filed it objection to the Sale Motion.

16. At the Sale Hearing, the Parties announced that they have reached a settlement of their disputes. Based on the settlement, the Committee withdrew its objection to the Sale Motion, and the Court granted the Sale Motion.

17. The Settlement Agreement is the result of extensive negotiations between the Parties to resolve the various disputes between the Parties concerning the Trustee Motion and the Sale Motion. The purpose of this motion is to seek that approval of the Settlement Agreement.

## IV.
## PROPOSED SETTLEMENT

18. Following extensive negotiation, the Parties reached a settlement that will compromise, settle, and release all causes of action owned by or that could have been asserted by the Debtors or the Committee against the Parties and their affiliates; allow for the administration of the estate, and a substantial recovery for unsecured creditors. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A**.

19. The Settlement offers a number of benefits and is in the best interests of the Debtor's estate and its creditors. The Settlement, among other things: (a) facilitated the approval and expeditious closing on the Sale, which maximizes the value of the Debtor's business as a going concern; provides substantial value to the Debtor's estate and unsecured creditors in the form of the Settlement Carveout, (b) provides for the subordination of sizable unsecured claims under Mr.

Franco's unsecured notes and deficiency claims under the Agneto Senior Secured Loan, (c) provides for a final resolution of claims owned by or that could be asserted by the Debtor and its estate against the Parties, and (d) provides critical use of cash collateral to facilitate the continuation of winding down of the Debtor's operations, the Sale, and sufficient funds to pay projected administrative expenses of the estate.

## V.
## RELIEF REQUESTED

20. Pursuant to this Motion, and in accordance with Bankruptcy Rule 9019(a), the Debtor respectfully requests that the Court enter an order approving this Settlement.

## VI.
## ARGUMENT AND AUTHORITIES

21. This Court has the right and the power to approve the Settlement. *See* 11 U.S.C. § 105; FED. R. BANKR. P. 9019. In pertinent part, Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.[1]

22. The Debtor believes that the Settlement is in the best interests of its estate and its creditors under the circumstances; thus, it should be approved. Settlements and compromises are a "normal part of the process of reorganization."[2] The Supreme Court of the United States has

---

[1] 11 U.S.C. § 105.

[2] *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

further said: "[i]n administering [Bankruptcy] Proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantially and reasonable doubts."[3] Settlements are "desirable and wise methods of bringing [closure] to . . . proceedings otherwise lengthy, complicated and costly."[4]

23. Under Bankruptcy Rule 9019(a), this Court may approve a compromise or settlement "on motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustee . . . ."[5] "In conducting a hearing under Rule 9019(a), the bankruptcy court is to determine whether the proposed compromise is fair and equitable, and in the best interests of the bankruptcy estate."[6] In making this determination, a bankruptcy court is required to apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."[7] To determine whether a settlement should be approved under 9019, the Court should:

> form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.[8]

24. The decision whether to approve a particular settlement within the discretion of the bankruptcy court. "It must be remembered that the evaluation of any lawsuit is quite problematic

---

[3] *Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson (In re TMT Trailer Ferry, Inc.)*, 390 U.S. 414, 424 (1968), on remand, *TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972).

[4] *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

[5] *Protective Comm. For Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

[6] *Id.*

[7] *Id.*

[8] *Id.* at 424-25.

**MOTION TO APPROVE SETTLEMENT BY AND BETWEEN**
**DEBTOR, COMMITTEE, AND AGNETO PARTIES** Page 6

and calls for a significant degree of speculation."[9] A reviewing court will uphold the approval of a settlement if it is the result of "an adequate and intelligent consideration of the merits of the claims, the difficulties of pursuing them, the potential harm to the debtor's estate caused by delay, and the fairness of the terms of the settlement."[10]

25. The Fifth Circuit has adopted the following factors to consider in evaluating the propriety of a proposed settlement or compromise:

    a.    The probability of success in the litigation, with due consideration for the uncertainty in fact and law;

    b.    the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

    c.    all other factors bearing on the wisdom of the compromise.[11]

26. <u>Probability of Success on the Merits</u>. The Sale Proceeds (or at least a substantial portion thereof) are arguably subject subject to the Senior Secured Loan and, therefore, without the Settlement, the Sale Proceeds would go to the estate or any of the unsecured creditors. Accordingly, the Debtor would have no ability to pursuing any potential claims of the estate in light of the cost of such pursuit. By contrast, the Settlement provides substantial benefit to the Debtor's estate in terms of additional funds that the Debtor will receive as Administrative Cash Collateral Reserve, the funds the Debtor's creditors will receive from the Unsecured Cash Collateral Reserve and as beneficiaries of the Unsecured Trust.

27. <u>Complexity, Expense, and Likely Duration of the Litigation</u>. If the Debtor were responsible to analyze and litigate the claims outside of the Settlement, the litigation could last a

---

9    *Texas Extrusion Corp. v Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1159 (5th Cir. 1988).

10   *TMT Trailer Ferry, Inc.*, 390 U.S. at 434.

11   *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

significant amount of time and would be burdensome on the estate due to the substantial litigation expenses that come with it. The Settlement provides the estate with the ability to benefit from any causes of action without having to bear the expense of litigation those causes of action because the Settlement preserves the estate's causes of action and provide unsecured creditors a 10% interest in any recovery on such claims through the Unsecured Trust and Litigation Trust. Accordingly, the Debtor believes that it has appropriately accounted for the expense and likely duration of litigating its Claims subject to the Settlement.

28. <u>Other Facts and Circumstances Bearing on the Wisdom of the Settlement</u>. The Settlement benefits the Debtor's estate and its creditors because it (a) facilitates the expeditious closing on the Sale, which maximizes the value of the Debtor's business as a going concern; provides substantial value to the Debtor's estate and unsecured creditors in the form of the Settlement Carveout; (b) provides the subordination of sizable unsecured claims under Mr. Franco's unsecured notes and deficiency claims under the Agneto Secured Claims; (c) provides for a final resolution of claims owned by or that could be asserted by the Debtor and its estate against the Parties; and (d) provides critical cash collateral funding to facilitate the continuation of the Debtor's operations to permit the Sale, ensuring that the Debtor has sufficient liquidity to pay payroll obligations, repair storm damage to its facilities, that would otherwise constitute administrative expenses of the estate. Finally, the Settlement is the result of arms-length, good-faith, and extensive negotiations by and between the Debtor, the Committee, and the Parties, all of whom were represented by separate counsel throughout. Accordingly, the Debtor believes that the Settlement is in the best interests of its estate under the circumstances and serves the "paramount interests" of its creditors.

## VII.
## CONCLUSION

**WHEREFORE**, based upon the foregoing, the Debtor respectfully requests this Court approve the Settlement, enter the proposed order attached to this Motion, and for such further relief as this Court deems proper.

DATED: July 18, 2019                    Respectfully submitted by:

*/s/ Mark C. Moore*
Stephen A. McCartin (TX 13374700)
Mark C. Moore (TX 24074751)
**FOLEY GARDERE**
**Foley & Lardner LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
smccartin@foley.com
mmoore@foley.com

**PROPOSED COUNSEL TO DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

I hereby certify that, on July 18, 2019, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

*/s/ Mark C. Moore*
Mark C. Moore

## EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**FRANKIE V'S KITCHEN, LLC,**<br><br>Debtor. | Case No. 19-31717<br><br>Chapter 11 |

## SETTLEMENT AGREEMENT AND STIPULATION

### I. Recitals

1. On May 20, 2019 (the "Petition Date"), Frankie V's Kitchen, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court").

2. Prepetition, Zions Bancorporation, N.A. d/b/a Amegy Bank ("Amegy") loaned the Debtor approximately $2,500,000 (the "Senior Loan") secured by a first priority, fully perfected lien in substantially all of the Debtor's assets (the "Senior Lien"). Mr. Jeffrey Franco, the Debtor's largest investor and the Chairman of its Board, guaranteed the Senior Loan. Post-petition, the Court entered three interim orders authorizing the Debtor's use of cash collateral subject to the Senior Lien, which granted Amegy post-petition certain replacement liens and other adequate protection [Docket Nos. 33 and 70] (together, the "Cash Collateral Orders").

3. On July 2, 2019, Amegy assigned the Senior Loan, the Senior Lien, and Amegy's rights and protections under the Cash Collateral Orders to Agneto Holdings, LP ("Agneto") [Docket No. 82]. Accordingly, Agneto now holds the Senior Loan, the Senior Lien and related secured claims and rights to adequate protection, including the Adequate Protection Lien (as defined in the Cash Collateral Orders) and the Prepetition Adequate Protection Superpriority Claim (as defined in the Cash Collateral Orders) (together with all rights, claims and interests, the "Agneto Secured Debt" secured by the "Agneto Secured Liens").

4. On June 3, 2019, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") comprising of Dianne Betts, Liberty Carton Co., and Thomas Max Nygaard McNutt IV Trust. On June 27, 2019, the Committee filed a Motion to Appoint Trustee [Docket No. 67] (the "Trustee Motion"). The Debtor objected to the Trustee Motion. The Court set the Trustee Motion and the Debtor's objection for hearing on July 3, 2019 (the "Trustee Hearing").

5. On July 3, 2019, Casa Verde Foods LLC presented the Debtor with an offer to purchase the Debtor's business assets (the "Sale") for a total purchase price of $2.5 million (the "Sale Proceeds"). On the same day, the Debtor filed a motion to approve the Sale [Docket No. 83] (the "Sale Motion"). The Court set the Sale Motion for hearing on July 17, 2019 (the "Sale Hearing").

6. On July 3, 2019, the Committee, Agneto, Mr. Franco and the Debtor (together, the "Parties") engaged in extensive arms-length negotiations and reached a proposed settlement to resolve the Trustee Motion, the Debtor's objection, and to facilitate the expedited closing on the Sale. The Parties announced the basic terms of the settlement on the record during the Trustee Hearing, subject to documentation and the Court's approval. This Settlement Agreement and Stipulation (the "Agreement") documents the terms of the Parties' settlement, subject to approval of the Court under Federal Rule of Bankruptcy Procedure 9019.

## II. Terms

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

1. **Trustee Motion**. The Committee shall continue any further hearing on the Trustee Motion until after final Court approval or denial of this Agreement or until such time as it appears that the Sale will not close. Upon final Court approval of the Agreement and closing of the Sale, the Committee shall withdraw the Trustee Motion and agree not to reassert it. The Committee agrees to not oppose the Debtor's retention of Steve Solomon as Chief Restructuring Officer.

2. **Sale Approval and Closing**. This Agreement is fully contingent on the Sale closing at a price of at least $2.5 million. The Parties agree to support and work cooperatively toward Court approval of the Sale Motion at the Sale Hearing and an expeditious Sale closing. At the Sale Closing, the Agneto Secured Liens will attach to the Sale Proceeds pursuant to the Sale Order which Sale Proceeds will constitute Agneto's Cash Collateral to be used as follows under this Agreement:

    a. Contingent upon the execution of the releases set forth in section 2(d) below, $1,000,000.00 (one million dollars) plus 50% of unencumbered Sale Proceeds in excess of $3,000,000.00 (three million dollars) shall be escrowed by the Debtor in a separate DIP account (the "Unsecured Cash Collateral Reserve") to fund the Unsecured Trust (as defined below). The Unsecured Cash Collateral Reserve will become unencumbered property of the Debtor's estate transferred by Agneto to, and earmarked for the benefit of, general unsecured creditors of the Debtor, excluding Released Parties (defined below), to either be distributed under the Plan (defined below) or otherwise treated and distributed as may be appropriate for the exclusive benefit of general unsecured creditors of the Debtor, excluding Released Parties (defined below) (and, in the event of a conversion of the Bankruptcy Case, for potential Chapter 7 administrative claims);

    b. $909,000.00 (nine-hundred-nine-thousand dollars) plus 50% of unencumbered Sale Proceeds in excess of $3,000,000.00 (three million dollars) shall be distributed to Agneto to be applied to reduce the Agneto Secured Debt balance;

    c. The remaining Sale Proceeds will be held by the Debtor subject to the Agneto Secured Liens as Agneto's Cash Collateral to be used in accordance with this Agreement (the "Administrative Cash Collateral Reserve"); and

    d. In partial consideration of and in exchange for the Unsecured Cash Collateral Reserve in subsection (a), the Debtor, its estate, and the Committee shall execute a release to the fullest extent allowed by law, of Agneto, Mr. Franco and each of their affiliates, members, officers, partners, directors, agents, employees, successors and attorneys.

3. **Confirmation of a Liquidating Plan**. The Parties agree to support expeditious confirmation of a joint chapter 11 plan of liquidation (the "Plan") that will provide as follows (the "Plan Terms"):

    a. The payment to Agneto of all funds remaining in the Administrative Cash Collateral Reserve and any remaining Cash Collateral, including any unspent "Carve-Out" (as defined in the Cash Collateral Order) funds, after payment in full of all agreed expenses in any Cash Collateral Order and related budget, to the extent allowed and subject to all rights to contest the same;

    b. The formation of a post-confirmation unsecured creditor trust (the "Unsecured Trust") to be administered by a trustee (the "Unsecured Trustee") selected by the Committee. The Unsecured Trustee will administer the Unsecured Trust for the benefit of all prepetition priority (excluding Bankruptcy Code § 503(b)(9)) and non-priority unsecured Claims (as defined in the Bankruptcy Code) allowed against the Debtor. The Plan shall assign and transfer to the Unsecured Trust, pursuant to Bankruptcy Code § 1123(b), free and clear of all liens, claims and encumbrances: (i) the Unsecured Cash Collateral Reserve, (ii) a non-voting beneficial interest (net of expenses and secured claims) in ten percent (10%) of the Liquidation Trust; and (iii) the Debtor's and estate's avoidance actions under Chapter 5 of the Bankruptcy Code, excluding any such claims against (1) the Released Parties (defined below); (2) any current or former officer or director of the Debtor; and (3) any claims to avoid liens or security interests. Agneto and Franco agree to subordinate any unsecured claims they hold such that these claims will not share in the Unsecured Trust until all other allowed unsecured claims are paid in full.

    c. The formation of a post-confirmation liquidating trust (the "Liquidation Trust") to be administered by Mr. Solomon as trustee (the "Liquidation Trustee") with sole authority. The Committee will not oppose the appointment of Mr. Solomon as Liquidation Trustee. The Plan shall assign and transfer to the Liquidation Trust, pursuant to Bankruptcy Code § 1123(b) and subject to

3

      the Agneto Secured Liens, the following assets: (i) all Causes of Action[1]; (ii) any proceeds of any Causes of Action; (iii) the proceeds or right to collect from any and all available insurance policy, including without limitation, any directors' and officers' insurance policies and any business interruption insurance policies; and (iii) any other assets of the Debtor not assigned to the Unsecured Trust. With regard to the prosecution of the Causes of Action, the Liquidation Trustee shall be a statutory representative of the Estate pursuant to 11 U.S.C. § 1123(b)(3)(B) and have all rights and powers that a chapter 11 trustee, creditors committee, or similar official would have in pursuit of such Causes of Action.

d. The Liquidation Trustee shall distribute the Liquidation Trust's proceeds in the following priority: (i) first to pay the expenses of the Liquidation Trust, (ii) second, to pay for the release and settlement of the Agneto Secured Liens; (iii) third, split as follows: ten percent (10%) to the Unsecured Trust on account of its beneficial interest, and all remaining interest and funds to Agneto, its successors and assigns.

e. A Plan release, exculpation and injunction, to the fullest extent allowed by law, by the Debtor, its estate, and the Committee of Agneto, Mr. Franco, Mr. Solomon and each of their affiliates, members, officers, partners, directors, agents, employees, successors and attorneys (the "Released Parties").

f. A Plan release, exculpation and injunction, to the fullest extent allowed by law for the Released Parties by the "Additional Releasing Parties" defined as: (i) all holders of Claims who vote to accept the Plan but do not opt out of the releases on the ballot, (ii) holders of Claims that are unimpaired under the Plan; (iii) holders of Claims whose vote to accept or reject the Plan is solicited but who do not vote to either accept or reject the Plan; and (iv) holders of Claims who vote to reject the Plan but do not opt out of the releases on the ballot.

---

[1] "Causes of Action" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, and Claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including (a) avoidance action or other Claims under chapter 5 of the Bankruptcy Code against (i) any lien or secured Claim holder and (ii) any "insider" of the Debtor as defined by the Bankruptcy Code other than those insiders released pursuant to the Plan and any non-insider secured claims; (b) Claims involved in civil actions identified in the Debtor's Statement of Financial Affairs; (c) other damages (general, exemplary, or both) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, or (v) causes of action based on alter ego or other liability theories; (vi) based on any other Claim of the Debtor, to the extent not specifically compromised or released pursuant to this Agreement; (d) any claims of the Debtor for equitable subordination under Bankruptcy Code § 510(c) or under other applicable laws; and (e) any Claim of the Debtor to recharacterize any other party's Claim. To the extent the Committee has the right to assert any such Causes of Action as defined herein, the Committee shall assign such rights and Causes of Action to the Liquidation Trust (other than the avoidance actions under chapter 5 of the Bankruptcy Code as described in section 3(b)(iii)).

4

4. **Cash Collateral**. Agneto will permit the Debtor's use of the Administrative Cash Collateral Reserve, plus any other Cash Collateral (apart from the proceeds of Causes of Action) in accordance with the Cash Collateral budgets approved by Agneto and Cash Collateral Orders of the Court; however, the Parties agree the Final Cash Collateral Order in this Bankruptcy Case and budget shall include, and the parties agree to seek approval of same simultaneously with any motion seeking approval of this Agreement:

   a. A Carve Out (as defined in the Cash Collateral Orders) for the Court approved professional fees and expenses of the Committee in the total cumulative amount of $100,000.00 (one hundred thousand dollars);

   b. A Carve Out for the Court approved professional fees and expenses of the Debtor in the total cumulative amount of $320,000.00 (three hundred twenty thousand dollars);

   c. A PACA Carve-Out (as defined in the Cash Collateral Order) up to $250,000.00 (two hundred fifty thousand dollars) as provided by the Cash Collateral Orders;

   d. Payment in full of all statutory U.S. Trustee fees; and

   e. A waiver of the right to challenge the validity, perfection, extent or priority of the Agneto Secured Claims and the Agneto Secured Liens.

5. **Termination of the Agreement**. This Agreement terminates on the earlier of the following (unless waived in writing by all the Parties), provided that such termination in no event shall alter, change, or affect the provisions of section 2(a) or (d) hereof:

   a. Failure of the Sale to close at a price of at least $2.5 million on or before August 1, 2019;

   b. Failure of the Debtor to confirm the Plan providing for the Plan Terms on or before October 1, 2019;

   c. Failure of at least seventy percent (70%) of the Unsecured note holders (based on both number of holders and dollar amount of Claim) to provide a full release to the Released Parties of all claims and causes of action, based on notes and any equity investments, and to qualify as Additional Releasing Parties under the Plan as contemplated under section 3(f) of this Agreement;

   d. Appointment of a chapter 11 trustee;

   e. Conversion of the chapter 11 to case to one under chapter 7; and

   f. Dismissal of the chapter 11 case.

4829-8898-3965.2

6. **Effect of Termination**. Termination of the Agreement shall return the Parties to the *status quo ante* as of July 3, 2019, provided that such termination in no event shall alter, change, or affect the provisions of section 2(a) or (d) hereof.

7. **Merger and Integration**. This document sets forth the entire agreement of the Parties and all prior and contemporaneous conversations, agreements, understandings, covenants, representations, and negotiations with respect to the subject matter hereof are merged herein and superseded hereby. No other agreements, covenants, representations, or warranties, express or implied, oral or written, have been made by any of the Parties with respect to the subject matter hereof. This Agreement may not be amended except by written consent of the Parties. The Parties specifically disclaim reliance on any representation or statement not contained in writing herein.

8. **Counterparts**. This Agreement can be signed in facsimile or PDF counterparts.

9. **Jurisdiction**. The Bankruptcy Court shall retain jurisdiction to enforce and construe the terms and provisions of this Agreement.

10. **Governing Law**. This Agreement is made and entered into under the laws of the State of Texas and Title 11 of the United States Code, and shall be interpreted, applied, and enforced under those laws. The Parties hereto agree that any litigation concerning this Agreement shall be held in the Court.

11. **No Presumption**. There shall be no drafting inference in connection with this Agreement.

12. **Cooperation and Reasonable Efforts**. Each Party shall use its commercially reasonable, good faith efforts to perform its obligations under this Agreement and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable law, to obtain all consents required, to satisfy all conditions to its obligations hereunder and to cause the transactions contemplated herein to be effected as soon as practicable, in accordance with the terms of this Agreement and shall cooperate fully with each other Party and its officers, directors, employees, agents, counsel, accountants and other designees in connection with any step required to be taken as a part of its obligations under this Agreement.

[SIGNATURE PAGE FOLLOWS]